Genie Harrison, SBN 163641
Amber Phillips, SBN 280107
**GENIE HARRISON LAW FIRM**
523 W. 6th Street, Suite 450
Los Angeles, CA. 90014
Telephone No.: (213) 805-5301
Facsimile No.:  (213) 805-5306
genie@genieharrisonlaw.com
amber@genieharrisonlaw.com
Attorneys for Plaintiff Cynthia Gutierrez

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

CYNTHIA GUTIERREZ, an individual,

           Plaintiff,

     vs.

KENNETH COLE PRODUCTIONS, INC.;
and DOES 1 through 20, inclusive,

         Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No.: 3:15-CV-00129-WHA**

**PLAINTIFF'S MEMORANDUMS OF
LAW IN SUPPORT OF DISPUTED JURY
INSTRUCTIONS**

Honorable William Alsup
Courtroom 8, 19th Floor

Date: July 13, 2016
Time: 2:00 p.m.

Action Filed: November 12, 2014
Trial Date: July 18, 2016

    Plaintiff hereby submits her memorandums of law in support of the following disputed jury instructions.

1

## TABLE OF CONTENTS

2

3

**PLAINTIFF'S MEMORANDUM OF LAW ISO OF DISPUTED INSTRUCTION NO. 1 RE WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY - ESSENTIAL FACTUAL ELEMENTS** ..........................................................................3

**PLAINTIFF'S MEMORANDUM OF LAW ISO OF DISPUTED INSTRUCTION NO. 2 RE RETALIATION** ..........................................................................8

**PLAINTIFF'S MEMORANDUM OF LAW ISO OF DISPUTED INSTRUCTION NO. 3 RE DISABILITY DISCRIMINATION - REASONABLE ACCOMMODATION - ESSENTIAL FACTUAL ELEMENTS** ................................................14

**PLAINTIFF'S MEMORANDUM OF LAW ISO OF DISPUTED INSTRUCTION NO. 4 RE DISABILITY DISCRIMINATION - "REASONABLE ACCOMMODATION" EXPLAINED** ...................................................................................19

**PLAINTIFF'S MEMORANDUM OF LAW ISO OF DISPUTED INSTRUCTION NO. 5 RE DISABILITY DISCRIMINATION - REASONABLE ACCOMMODATION - FAILURE TO ENGAGE IN INTERACTIVE PROCESS** ...........................22

**PLAINTIFF'S MEMORANDUM OF LAW ISO OF DISPUTED INSTRUCTION NO. 6 RE INTRODUCTION TO TORT DAMAGES - LIABILITY CONTESTED** ..........26

**PLAINTIFF'S MEMORANDUM OF LAW ISO OFDISPUTED INSTRUCTION NO. 7 DAMAGES ON MULTIPLE LEGAL THEORIES** ...................................28

**PLAINTIFF'S MEMORANDUM OF LAW ISO OFDISPUTED INSTRUCTION NO. 8 RE LEAVE OF ABSENCE AS A REASONABLE ACCOMMODATION** .............31

**PLAINTIFF'S MEMORANDUM OF LAW ISO OFDISPUTED INSTRUCTION NO. 9 RE ABILITY TO PERFORM WHEN ACCOMMODATION SOUGHT IS RECUPERATIVE LEAVE OF ABSENCE** .........................................32

**PLAINTIFF'S MEMORANDUM OF LAW ISO OFDISPUTED INSTRUCTION NO. 10 RE DUTY TO ACCOMMODATE IS ONGOING OBLIGATION** ...................34

**PLAINTIFF'S MEMORANDUM OF LAW ISO OFDISPUTED INSTRUCTION NO. 11 RE INTERACTIVE PROCESS – OBLIGATIONS OF EMPLOYER** ...............34

**PLAINTIFF'S MEMORANDUM OF LAW ISO OFDISPUTED INSTRUCTION NO. 12 RE REASSIGNMENT TO A VACANT POSITION** ................................35

**PLAINTIFF'S MEMORANDUM OF LAW ISO OFDISPUTED INSTRUCTION NO. 13 RE ACTION BASED ON NEED FOR ACCOMMODATION IS DIRECT EVIDENCE OF SUBSTANTIAL MOTIVATING REASON FOR THE ACTION TAKEN** ........................................................................................36

**PLAINTIFF'S MEMORANDUM OF LAW ISO OFDISPUTED INSTRUCTION NO. 14 RE CANCER IS A PROTECTED MEDICAL CONDITION** ........................36

**PLAINTIFF'S MEMORANDUM OF LAW ISO OFDISPUTED INSTRUCTION NO. 15 RE DISABILITY DISCRIMINATION – AFFIRMATIVE DEFENSE – UNDUE HARDSHIP** ......................................................................................37

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MEMORANDUM OF LAW ISO OF**

**DISPUTED INSTRUCTION NO. 1 RE WRONGFUL DISCHARGE IN VIOLATION OF**

**PUBLIC POLICY - ESSENTIAL FACTUAL ELEMENTS**

**OFFERED BY PLAINTIFF**

**(CACI 2430)**

"'[W]hile an at-will employee may be terminated for no reason, or for an arbitrary or irrational reason, there can be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy.  Any other conclusion would sanction lawlessness, which courts by their very nature are bound to oppose.'"  (Casella v. SouthWest Dealer Services, Inc. (2007) 157 Cal.App.4th 1127, 1138-1139 [69 Cal.Rptr.3d 445], internal citations omitted.)

"[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions."  (Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839, 610 P.2d 1330].)

"The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." (Yau v. Allen (2014) 229 Cal.App.4th 144, 154 [176 Cal.Rptr.3d 824].)

"[T]his court established a set of requirements that a policy must satisfy to support a tortious discharge claim.  First, the policy must be supported by either constitutional or statutory provisions. Second, the policy must be 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual.  Third, the policy must have been articulated at the time of the discharge.  Fourth, the policy must be 'fundamental' and 'substantial.'"  (Stevenson v. Superior Court (1997) 16 Cal.4th 880, 889-890 [66 Cal.Rptr.2d 888, 941 P.2d 1157], footnote omitted.)

1   "Policies are not 'public' (and thus do not give rise to a common law tort claim) when they are

2   derived from statutes that 'simply regulate conduct between private individuals, or impose requirements

3   whose fulfillment does not implicate fundamental public policy concerns.' " (Diego v. Pilgrim United

4   Church of Christ (2014) 231 Cal.App.4th 913, 926 [180 Cal.Rptr.3d 359].)

5

6   "[T]he cases in which violations of public policy are found generally fall into four categories:

7   (1) refusing to violate a statute; (2) performing a statutory obligation (3) exercising a statutory right or

8   privilege; and (4) reporting an alleged violation of a statute of public importance."  (Gantt, supra 1

9   Cal.4th at pp. 1090-1091, internal citations and footnote omitted, overruled on other grounds in Green v.

10  Ralee Engineering Co. (1998) 19 Cal.4th 66, 80, fn. 6 [78 Cal.Rptr.2d 16, 960 P.2d 1046]; accord

11  Stevenson, supra, 16 Cal.4th at p. 889.)

12

13  "[T]ermination of an employee most clearly violates public policy when it contravenes the

14  provision of a statute forbidding termination for a specified reason … . " (Diego, supra, 231 Cal.App.4th

15  at p. 926)

16

17  "[Discharge because of employee's] [r]efusal to violate a governmental regulation may also be

18  the basis for a tort cause of action where the administrative regulation enunciates a fundamental public

19  policy and is authorized by statute."  (Scott v. Phoenix Schools, Inc. (2009) 175 Cal.App.4th 702, 708-

20  709 [96 Cal.Rptr.3d 159].)

21

22  "In the context of a tort claim for wrongful discharge, tethering public policy to specific

23  constitutional or statutory provisions serves not only to avoid judicial interference with the legislative

24  domain, but also to ensure that employers have adequate notice of the conduct that will subject them to

25  tort liability to the employees they discharge . . .."  (Stevenson, supra, 16 Cal.4th at p. 889.)

26

27  "[A]n employee need not prove an actual violation of law; it suffices if the employer fired him

28  for reporting his 'reasonably based suspicions' of illegal activity."  (Green, supra, 19 Cal.4th at p. 87,

internal citation omitted.)

"[A]n employer's authority over its employee does not include the right to demand that the employee commit a criminal act to further its interests, and an employer may not coerce compliance with such unlawful directions by discharging an employee who refuses to follow such an order . . .." (Tameny, supra, 27 Cal.3d at p. 178.)

" '[T]here is a "'fundamental public interest in a workplace free from illegal practices … .' '[T]he public interest is in a lawful, not criminal, business operation. Attainment of this objective requires that an employee be free to call his or her employer's attention to illegal practices, so that the employer may prevent crimes from being committed by misuse of its products by its employees.' " (Yau, supra, 229 Cal.App.4th at p. 157.)

"An action for wrongful termination in violation of public policy 'can only be asserted against an employer. An individual who is not an employer cannot commit the tort of wrongful discharge in violation of public policy; rather, he or she can only be the agent by which an employer commits that tort.' "  (Kim v. Konad USA Distribution, Inc. (2014) 226 Cal.App.4th 1336, 1351 [172 Cal.Rptr.3d 686], original italics.)

Employees in both the private and public sector may assert this claim.  (See Shoemaker v. Myers (1992) 2 Cal.App.4th 1407 [4 Cal.Rptr.2d 203].)

"Sex discrimination in employment may support a claim of tortious discharge in violation of public policy."  (Kelley v. The Conco Cos. (2011) 196 Cal.App.4th 191, 214 [126 Cal.Rptr.3d 651].)

"In sum, a wrongful termination against public policy common law tort based on sexual harassment can be brought against an employer of any size."  (Kim, supra, 226 Cal.App.4th at p. 1351.)

1    "To establish a claim for wrongful termination in violation of public policy, an employee must

2    prove causation. (See CACI No. 2430 [using phrase 'substantial motivating reason' to express

3    causation].) Claims of whistleblower harassment and retaliatory termination may not succeed where a

4    plaintiff 'cannot demonstrate the required nexus between his reporting of alleged statutory violations and

5    his allegedly adverse treatment by [the employer].' " (Ferrick v. Santa Clara University (2014) 231

6    Cal.App.4th 1337, 1357 [181 Cal.Rptr.3d 68].)

7

8    "It would be nonsensical to provide a different standard of causation in FEHA cases and

9    common law tort cases based on public policies encompassed by FEHA." (Mendoza v. Western

10   Medical Center Santa Ana (2014) 222 Cal.App.4th 1334, 1341 [166 Cal.Rptr.3d 720].)

11

12   "FEHA's policy prohibiting disability discrimination in employment is sufficiently substantial

13   and fundamental to support a claim for wrongful termination in violation of public policy." (Rope v.

14   Auto-Chlor System of Washington, Inc. (2013) 220 Cal.App.4th 635, 660 [163 Cal.Rptr.3d 392],

15   overruled on other grounds by EMPLOYMENT—DISABILITY ACCOMMODATIONS—RELIGIOUS

16   ACCOMMODATIONS, 2015 Cal. Legis. Serv. Ch. 122, Section 2 (WEST) ("AB 987").) (Citation modified

17   by Plaintiff.)

18

19   "Although the fourth cause of action references FEHA as one source of the public policy at issue,

20   this is not a statutory FEHA cause of action. FEHA does not displace or supplant common law tort

21   claims for wrongful discharge." (Kim, supra, 226 Cal.App.4th at p. 1349.)

22

23   "California's minimum wage law represents a fundamental policy for purposes of a claim for

24   wrongful termination or constructive discharge in violation of public policy." (Vasquez v. Franklin

25   Management Real Estate Fund, Inc. (2013) 222 Cal.App.4th 819, 831−832 [166 Cal.Rptr.3d 242].)

26

27   " 'Labor Code section 1102.5, subdivision (b), which prohibits employer retaliation against an

28   employee who reports a reasonably suspected violation of the law to a government or law enforcement

---

agency, reflects the broad public policy interest in encouraging workplace "whistleblowers," who may without fear of retaliation report concerns regarding an employer's illegal conduct. This public policy is the modern day equivalent of the long-established duty of the citizenry to bring to public attention the doings of a lawbreaker. [Citation.] …' " (Ferrick, supra, 231 Cal.App.4th at p. 1355.)

"That [defendant]'s decision not to renew her contract for an additional season might have been influenced by her complaints about an unsafe working condition . . . does not change our conclusion in light of the principle that a decision not to renew a contract set to expire is not actionable in tort." (Touchstone Television Productions v. Superior Court (2012) 208 Cal.App.4th 676, 682 [145 Cal.Rptr.3d 766], original italics.)

" ' "[P]ublic policy' as a concept is notoriously resistant to precise definition, and . . . courts should venture into this area, if at all, with great care . . . ." [Citation.] Therefore, when the constitutional provision or statute articulating a public policy also includes certain substantive limitations in scope or remedy, these limitations also circumscribe the common law wrongful discharge cause of action. Stated another way, the common law cause of action cannot be broader than the constitutional provision or statute on which it depends, and therefore it 'presents no impediment to employers that operate within the bounds of law." [Citation.]' " (Dutra v. Mercy Medical Center Mt. Shasta (2012) 209 Cal.App.4th 750, 756 [146 Cal.Rptr.3d 922], original italics.)

Secondary Sources

8 Witkin, Summary of California Law (10th ed. 2005) Agency and Employment, § 222

Chin et al., California Practice Guide: Employment Litigation, Ch. 5-A, Wrongful Discharge In Violation Of Public Policy (Tameny Claims), ¶¶ 5:2, 5:47, 5:50, 5:70, 5:105, 5:115, 5:150, 5:151, 5:170, 5:195, 5:220, 5:235 (The Rutter Group)

1 Wrongful Employment Termination Practice (Cont.Ed.Bar 2d ed.) Public Policy Violations, § 5.4

1    4 Wilcox, California Employment Law, Ch. 60, Liability for Wrongful Termination and

2    Discipline, § 60.04 (Matthew Bender)

3    21 California Forms of Pleading and Practice, Ch. 249, Employment Law:  Termination and

4    Discipline, §§ 249.12, 249.50-249.52 (Matthew Bender)

5    10 California Points and Authorities, Ch. 100, Employer and Employee:  Wrongful Termination

6    and Discipline, §§ 100.52-100.58 (Matthew Bender)

7    California Civil Practice:  Employment Litigation §§ 6:23-6:25 (Thomson Reuters)

8

9    **PLAINTIFF'S MEMORANDUM OF LAW ISO OF**

10   **DISPUTED INSTRUCTION NO. 2 RE RETALIATION**

11   **OFFERED BY PLAINTIFF**

12   **(CACI 2505; GOV. CODE, § 12940(H) AS MODIFIED BY EMPLOYMENT—DISABILITY**

13   **ACCOMMODATIONS—RELIGIOUS ACCOMMODATIONS, 2015 CAL. LEGIS. SERV. CH.**

14   **122, SECTION 2 (WEST))**

15

16   Retaliation Prohibited Under Fair Employment and Housing Act. Government Code section

17   12940(h).

18

19   "Person" Defined Under Fair Employment and Housing Act. Government Code section

20   12925(d).

21

22   Prohibited Retaliation. Title 2 California Code of Regulations section 11021.

23

24   "[I]n order to establish a prima facie case of retaliation under the FEHA, a plaintiff must show

25   (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse

26   employment action, and (3) a causal link existed between the protected activity and the employer's

27   action.  Once an employee establishes a prima facie case, the employer is required to offer a legitimate,

28   nonretaliatory reason for the adverse employment action.  If the employer produces a legitimate reason

for the adverse employment action, the presumption of retaliation ' " 'drops out of the picture,' " ' and the burden shifts back to the employee to prove intentional retaliation." (Yanowitz, supra, 36 Cal.4th at p. 1042, internal citations omitted.)

"Actions for retaliation are 'inherently fact-driven'; it is the jury, not the court, that is charged with determining the facts." (*McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 299 [156 Cal.Rptr.3d 851].)

"It is well established that a plaintiff in a retaliation case need only prove that a retaliatory animus was at least a substantial or motivating factor in the adverse employment decision." (George v. California Unemployment Ins. Appeals Bd.  (2009) 179 Cal.App.4th 1475, 1492 [102 Cal.Rptr.3d 431].)

"Retaliation claims are inherently fact-specific, and the impact of an employer's action in a particular case must be evaluated in context.  Accordingly, although an adverse employment action must materially affect the terms, conditions, or privileges of employment to be actionable, the determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the workplace context of the claim."  (Yanowitz, supra, 36 Cal.4th at p. 1052.)

"Contrary to [defendant]'s assertion that it is improper to consider collectively the alleged retaliatory acts, there is no requirement that an employer's retaliatory acts constitute one swift blow, rather than a series of subtle, yet damaging, injuries.  Enforcing a requirement that each act separately constitute an adverse employment action would subvert the purpose and intent of the statute."  (Yanowitz, supra, 36 Cal.4th at pp. 1055–1056, internal citations omitted.)

"Clearly, section 12940, subdivision (h) encompasses a broad range of protected activity.  An employee need not use specific legal terms or buzzwords in opposing discrimination. Nor is it necessary for an employee to file a formal charge.  The protected activity element may be established by evidence

that the plaintiff threatened to file a discrimination charge, by a showing that the plaintiff mistakenly, but reasonably and sincerely believed he was opposing discrimination, or by evidence an employer believed the plaintiff was a potential witness in another employee's FEHA action."  (Rope v. Auto-Chlor System of Washington, Inc. (2013) 220 Cal.App.4th 635, 652 [163 Cal.Rptr.3d 392], overruled on other grounds by EMPLOYMENT—DISABILITY ACCOMMODATIONS—RELIGIOUS ACCOMMODATIONS, 2015 Cal. Legis. Serv. Ch. 122, Section 2 (WEST) ("AB 987"), internal citations and footnote omitted.) (Citation modified by Plaintiff.)

"It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: […] (m)(2) For an employer or other entity covered by this part to, in addition to the employee protections provided pursuant to subdivision (h), retaliate or otherwise discriminate against a person for requesting accommodation under this subdivision, regardless of whether the request was granted." Government Code section 12940(m)(2). (Citation added by Plaintiff.)

"A request for reasonable accommodation based on religion or disability constitutes protected activity under Section 12940 of the Government Code, such that when a person makes such a request, he or she is protected against retaliation for making the request." EMPLOYMENT—DISABILITY ACCOMMODATIONS—RELIGIOUS ACCOMMODATIONS, 2015 Cal. Legis. Serv. Ch. 122, Section 1(a) (WEST) ("AB 987"). (Citation added by Plaintiff.)

"[A] statute that merely clarifies, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment…. Such a legislative act has no retrospective effect because the true meaning of the statute remains the same." (Western Security Bank v. Sup. Ct. (Beverly Hills Business Bank), 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243] (1997)). (Citation added by Plaintiff.)

"The Legislature recognizes that federal law affords similar protection to a person making [a

1  request for reasonable accommodation], as articulated by the Equal Employment Opportunity

2  Commission in its interpretive guidance of the Americans with Disabilities Act of 1990 (Public Law

3  101-336) and Title VII of the Civil Rights Act of 1964 (Public Law 88-352, as amended). The

4  Legislature affirms that the federal acts provide a floor of protection and that this state's law has always

5  exceeded the protections afforded." AB 987, supra, Section 1(b). (Citation added by Plaintiff.)

6

7         "Notwithstanding any interpretation of this issue in *Rope v. Auto-Chlor Sys. Of Washington,*

8  *Inc.* (2013) 220 Cal.App.4th 635, the Legislature intends (1) to make clear that a request for reasonable

9  accommodation on the basis of religion or disability is a protected activity, and (2) by enacting

10  paragraph (2) of subdivision (m) and paragraph (4) of subdivision (l) of Section 12940, to provide

11  protection against retaliation when an individual makes a request for reasonable accommodation under

12  these sections, regardless of whether the request was granted." AB987, supra, Section (1)(d). (Citation

13  added by Plaintiff.)

14

15         "Moreover, [defendant]'s actions had a substantial and material impact on the conditions of

16  employment.  The refusal to promote [plaintiff] is an adverse employment action under FEHA.  There

17  was also a pattern of conduct, the totality of which constitutes an adverse employment action.  This

18  includes undeserved negative job reviews, reductions in his staff, ignoring his health concerns and acts

19  which caused him substantial psychological harm."  (Wysinger, supra, 157 Cal.App.4th at p. 424,

20  internal citations omitted.)

21

22         "A long period between an employer's adverse employment action and the employee's earlier

23  protected activity may lead to the inference that the two events are not causally connected.  But if

24  between these events the employer engages in a pattern of conduct consistent with a retaliatory intent,

25  there may be a causal connection."  (Wysinger, supra, 157 Cal.App.4th at p. 421, internal citation

26  omitted.)

27

28         "Both direct and circumstantial evidence can be used to show an employer's intent to retaliate.

'Direct evidence of retaliation may consist of remarks made by decisionmakers displaying a retaliatory motive.'  Circumstantial evidence typically relates to such factors as the plaintiff's job performance, the timing of events, and how the plaintiff was treated in comparison to other workers."  (Colarossi v. Coty US Inc. (2002) 97 Cal.App.4th 1142, 1153 [119 Cal.Rptr.2d 131], internal citations omitted.)

"The retaliatory motive is 'proved by showing that plaintiff engaged in protected activities, that his employer was aware of the protected activities, and that the adverse action followed within a relatively short time thereafter.' '  The causal link may be established by an inference derived from circumstantial evidence, "such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision." ' "  (Fisher v. San Pedro Peninsula Hospital (1989) 214 Cal.App.3d 590, 615 [262 Cal.Rptr. 842], internal citations omitted.)

"[A]n employer generally can be held liable for the retaliatory actions of its supervisors." (Wysinger, supra, 157 Cal.App.4th at p. 420.)

"Plaintiff, although a partner, is a person whom section 12940, subdivision (h) protects from retaliation for opposing the partnership-employer's harassment against those employees." (Fitzsimons v. California Emergency Physicians Medical Group (2012) 205 Cal.App.4th 1423, 1429 [141 Cal.Rptr.3d 265].)

"[A]n employer may be found to have engaged in an adverse employment action, and thus liable for retaliation under section 12940(h), 'by permitting . . . fellow employees to punish [him] for invoking [his] rights.'  We therefore hold that an employer may be held liable for coworker retaliatory conduct if the employer knew or should have known of coworker retaliatory conduct and either participated and encouraged the conduct, or failed to take reasonable actions to end the retaliatory conduct."  (Kelley v. The Conco Cos. (2011) 196 Cal.App.4th 191, 214 [126 Cal.Rptr.3d 651], internal citation omitted.)

1    "[T]he employer is liable for retaliation under section 12940, subdivision (h), but nonemployer

2    individuals are not personally liable for their role in that retaliation."  (Jones v. The Lodge at Torrey

3    Pines Partnership (2008) 42 Cal.4th 1158, 1173 [72 Cal.Rptr.3d 624, 177 P.3d 232].)

4

5    "[U]nder certain circumstances, a retaliation claim may be brought by an employee who has

6    complained of or opposed conduct, even when a court or jury subsequently determines the conduct

7    actually was not prohibited by the FEHA.  Indeed, this precept is well settled.  An employee is protected

8    against retaliation if the employee reasonably and in good faith believed that what he or she was

9    opposing constituted unlawful employer conduct such as sexual harassment or sexual discrimination."

10   (Miller v. Department of Corr. (2005) 36 Cal.4th 446, 473–474 [30 Cal.Rptr.3d 797, 115 P.3d 77],

11   internal citations omitted.)

12

13   " 'The legislative purpose underlying FEHA's prohibition against retaliation is to prevent

14   employers from deterring employees from asserting good faith discrimination complaints . . . .'

15   Employer retaliation against employees who are believed to be prospective complainants or witnesses

16   for complainants undermines this legislative purpose just as effectively as retaliation after the filing of a

17   complaint. To limit FEHA in such a way would be to condone 'an absurd result' that is contrary to

18   legislative intent.  We agree with the trial court that FEHA protects employees against preemptive

19   retaliation by the employer."  (Steele, supra, 162 Cal.App.4th at p. 1255, internal citations omitted.)

20

21   "Government Code section 12940, subdivision (h), does not shield an employee against

22   termination or lesser discipline for either lying or withholding information during an employer's internal

23   investigation of a discrimination claim. In other words, public policy does not protect deceptive activity

24   during an internal investigation. Such conduct is a legitimate reason to terminate an at-will employee."

25   (McGrory v. Applied Signal Technology, Inc. (2013) 212 Cal.App.4th 1510, 1528 [152 Cal.Rptr.3d 154],

26   footnotes omitted.)

27

28

1   "Although appellant does not argue she was constructively discharged, such a claim is not
2   necessary to find unlawful retaliation." (*McCoy, supra,* 216 Cal.App.4th at p. 301.)

3

4                                    Secondary Sources

5

6       8 Witkin, Summary of California Law (10th ed. 2005) Constitutional Law, §§ 922, 940, 941

7       Chin et al., California Practice Guide: Employment Litigation, Ch. 7-A, Title VII And The
8   California Fair Employment And Housing Act, ¶¶ 7:680–7:841 (The Rutter Group)

9       1 Wrongful Employment Termination Practice (Cont.Ed.Bar 2d ed.) Discrimination Claims, §§
10  2.83-2.88

11      2 Wilcox, California Employment Law, Ch. 41, Substantive Requirements Under Equal
12  Employment Opportunity Laws, § 41.131 (Matthew Bender)

13      11 California Forms of Pleading and Practice, Ch. 115, Civil Rights:   Employment
14  Discrimination, §§ 115.37, 115.94 (Matthew Bender)

15      California Civil Practice: Employment Litigation, §§ 2:74–2:75 (Thomson Reuters)

16

17              **PLAINTIFF'S MEMORANDUM OF LAW ISO OF**
18  **DISPUTED INSTRUCTION NO. 3 RE DISABILITY DISCRIMINATION - REASONABLE**
19              **ACCOMMODATION - ESSENTIAL FACTUAL ELEMENTS**
20                        **OFFERED BY PLAINTIFF**
21                  **(CACI 2541; GOV. CODE, § 12940(M))**

22

23      Reasonable Accommodation Required.  Government Code section 12940(m).

24

25      "Reasonable Accommodation" Explained.  Government Code section 12926(p).

26

27      "Medical Condition" Defined.  Government Code section 12926(i).

28

"Mental Disability" Defined.  Government Code section 12926(j).

"Physical Disability" Defined.  Government Code section 12926(m).

"Substantial" Limitation Not Required.  Government Code section 12926.1(c).

"The essential elements of a failure to accommodate claim are: (1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., he or she can perform the essential functions of the position); and (3) the employer failed to reasonably accommodate the plaintiff's disability."  (Cuiellette, supra, 194 Cal.App.4th at p. 766.)

"Under the FEHA, 'reasonable accommodation' means 'a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired.' " (Cuiellette, supra, 194 Cal.App.4th at p. 766.)

"Reasonable accommodations include '[j]ob restructuring, part-time or modified work schedules, reassignment to a vacant position, … and other similar accommodations for individuals with disabilities.' "(Swanson v. Morongo Unified School Dist. (2014) 232 Cal.App.4th 954, 968 [181 Cal.Rptr.3d 553], original italics.)

"The examples of reasonable accommodations in the relevant statutes and regulations include reallocating nonessential functions or modifying how or when an employee performs an essential function, but not eliminating essential functions altogether.  FEHA does not obligate the employer to accommodate the employee by excusing him or her from the performance of essential functions." (Nealy v. City of Santa Monica (2015) 234 Cal.App.4th 359, 375 [184 Cal.Rptr.3d 9].)

"The question now arises whether it is the employees' burden to prove that a reasonable accommodation could have been made, i.e., that they were qualified for a position in light of the potential accommodation, or the employers' burden to prove that no reasonable accommodation was

available, i.e., that the employees were not qualified for any position because no reasonable accommodation was available.  Applying Green's burden of proof analysis to section 12940(m), we conclude that the burden of proving ability to perform the essential functions of a job with accommodation should be placed on the plaintiff under this statute as well.  First, an employee's ability to perform the essential functions of a job is a prerequisite to liability under section 12940(m).  Second, the Legislature modeled section 12940(m) on the federal reasonable accommodation requirement (adopting almost verbatim the federal statutory definition of 'reasonable accommodation' by way of example).  Had the Legislature intended the employer to bear the burden of proving ability to perform the essential functions of the job, contrary to the federal allocation of the burden of proof, it could have expressly provided for that result, but it did not.  Finally, general evidentiary principles support allocating the burden of proof on this issue to the plaintiff."  (Nadaf-Rahrov, supra, 166 Cal.App.4th at pp. 977-978, internal citations omitted.)


        " 'If the employee cannot be accommodated in his or her existing position and the requested accommodation is reassignment, an employer must make affirmative efforts to determine whether a position is available.  [Citation.]  A reassignment, however, is not required if "there is no vacant position for which the employee is qualified."  [Citations.]  "The responsibility to reassign a disabled employee who cannot otherwise be accommodated does 'not require creating a new job, moving another employee, promoting the disabled employee or violating another employee's rights . . . ." '  [Citations.]  "What is required is the 'duty to reassign a disabled employee if an already funded, vacant position at the same level exists.'  [Citations.]" [Citations.]' "  (Furtado, supra, 212 Cal.App.4th at p. 745.)


        "[A] disabled employee seeking reassignment to a vacant position 'is entitled to preferential consideration.' " (Swanson, supra, 232 Cal.App.4th at p. 970.)


        "Although no particular form of request is required, ' "[t]he duty of an employer reasonably to accommodate an employee's handicap does not arise until the employer is 'aware of respondent's disability and physical limitations.' . . . " ' ' "[T]he employee can't expect the employer to read his mind

and know he secretly wanted a particular accommodation and sue the employer for not providing it.  Nor is an employer ordinarily liable for failing to accommodate a disability of which it had no knowledge. . . ." . . . ' "  (Avila, supra, 165 Cal.App.4th at pp. 1252-1253, internal citations omitted.)

"Employers must make reasonable accommodations to the disability of an individual unless the employer can demonstrate that doing so would impose an 'undue hardship.' "  (Prilliman, supra, 53 Cal.App.4th at p. 947.)

" 'Ordinarily the reasonableness of an accommodation is an issue for the jury.' "  (Prilliman, supra, 53 Cal.App.4th at p. 954, internal citation omitted.)

"[T]he duty of an employer to provide reasonable accommodation for an employee with a disability is broader under the FEHA than under the ADA."  (Bagatti, supra, 97 Cal.App.4th at p. 362.)

"Under the FEHA . . . an employer is relieved of the duty to reassign a disabled employee whose limitations cannot be reasonably accommodated in his or her current job only if reassignment would impose an 'undue hardship' on its operations or if there is no vacant position for which the employee is qualified."  (Spitzer v. Good Guys, Inc. (2000) 80 Cal.App.4th 1376, 1389 [96 Cal.Rptr.2d 236].)

"On these issues, which are novel to California and on which the federal courts are divided, we conclude that employers must reasonably accommodate individuals falling within any of FEHA's statutorily defined 'disabilities,' including those 'regarded as' disabled, and must engage in an informal, interactive process to determine any effective accommodations."  (Gelfo v. Lockheed Martin Corp. (2006) 140 Cal.App.4th 34, 55 [43 Cal.Rptr.3d 874].)

"Appellant also stated a viable claim under section 12940, subdivision (m), which mandates that an employer provide reasonable accommodations for the known physical disability of an employee.  She alleged that she was unable to work during her pregnancy, that she was denied reasonable

accommodations for her pregnancy-related disability and terminated, and that the requested accommodations would not have imposed an undue hardship on [defendant].  A finite leave of greater than four months may be a reasonable accommodation for a known disability under the FEHA." (Sanchez v. Swissport, Inc. (2013) 213 Cal.App.4th 1331, 1341 [153 Cal.Rptr.3d 367])

"To the extent [plaintiff] claims the [defendant] had a duty to await a vacant position to arise, he is incorrect.  A finite leave of absence may be a reasonable accommodation to allow an employee time to recover, but FEHA does not require the employer to provide an indefinite leave of absence to await possible future vacancies."  (Nealy, supra, 234 Cal.App.4th at pp. 377−378.)

Secondary Sources

8 Witkin, Summary of California Law (10th ed. 2005) Constitutional Law, § 762

Chin et al., California Practice Guide: Employment Litigation, Ch. 9-C, California Fair Employment And Housing Act (FEHA), ¶¶ 9:2250–9:2285, 9:2345–9:2347 (The Rutter Group)

1 Wrongful Employment Termination Practice (Cont.Ed.Bar 2d ed.) Discrimination Claims, § 2.79

2 Wilcox, California Employment Law, Ch. 41, Substantive Requirements Under Equal Employment Opportunity Laws, §§ 41.32[2][c], 41.51[3] (Matthew Bender)

11 California Forms of Pleading and Practice, Ch. 115, Civil Rights: Employment Discrimination, §§ 115.22, 115.35, 115.92 (Matthew Bender)

California Civil Practice: Employment Litigation § 2:50 (Thomson Reuters)

///
///
///
///
///
///

**PLAINTIFF'S MEMORANDUM OF LAW ISO OF**

**DISPUTED INSTRUCTION NO. 4 RE DISABILITY DISCRIMINATION - "REASONABLE**

**ACCOMMODATION" EXPLAINED**

**OFFERED BY PLAINTIFF**

**(CACI 2542)**

Government Code section 12940(m) provides that it is an unlawful employment practice "[f]or an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee.  Nothing in this subdivision or in . . . subdivision (a) shall be construed to require an accommodation that is demonstrated by the employer or other covered entity to produce undue hardship, as defined in subdivision (t) of Section 12926, to its operation."

Government Code section 12926(o) provides:

"Reasonable accommodation" may include either of the following:

    (1)    Making existing facilities used by employees readily accessible to, and usable by, individuals with disabilities.

    (2)    Job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

The California Fair Employment and Housing Commission's regulations provide:

Reasonable accommodation may, but does not necessarily, include, nor is it limited to,

such measures as:

> (1)   Accessibility.  Making existing facilities used by employees readily accessible to and usable by individuals with disabilities;

> (2)   Job Restructuring.  Job restructuring, reassignment to a vacant position, part-time or modified work schedules, acquisition or modification of equipment or devices, adjustment or modification of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar actions."  (Cal. Code Regs., tit. 2, § 7293.9(a).)

Government Code section 12926.1(c) provides, in part: "[T]he Legislature has determined that the definitions of 'physical disability' and 'mental disability' under the law of this state require a 'limitation' upon a major life activity, but do not require, as does the Americans with Disabilities Act of 1990, a 'substantial limitation.'  This distinction is intended to result in broader coverage under the law of this state than under that federal act.  Under the law of this state, whether a condition limits a major life activity shall be determined without respect to any mitigating measures, unless the mitigating measure itself limits a major life activity, regardless of federal law under the Americans with Disabilities Act of 1990.  Further, under the law of this state, 'working' is a major life activity, regardless of whether the actual or perceived working limitation implicates a particular employment or a class or broad range of employments."

"[T]he duty of an employer to provide reasonable accommodation for an employee with a disability is broader under the FEHA than under the ADA."  (Bagatti v. Department of Rehabilitation (2002) 97 Cal.App.4th 344, 362 [118 Cal.Rptr.2d 443].)

"[A]n employer who knows of the disability of an employee has an affirmative duty to make known to the employee other suitable job opportunities with the employer and to determine whether the

1   employee is interested in, and qualified for, those positions, if the employer can do so without undue

2   hardship or if the employer offers similar assistance or benefit to other disabled or nondisabled

3   employees or has a policy of offering such assistance or benefit to any other employees."  (Prilliman v.

4   United Air Lines, Inc. (1997) 53 Cal.App.4th 935, 950-951 [62 Cal.Rptr.2d 142].)

5

6        "The question now arises whether it is the employees' burden to prove that a reasonable

7   accommodation could have been made, i.e., that they were qualified for a position in light of the

8   potential accommodation, or the employers' burden to prove that no reasonable accommodation was

9   available, i.e., that the employees were not qualified for any position because no reasonable

10  accommodation was available. [¶¶] Applying Green's burden of proof analysis to section 12940(m), we

11  conclude that the burden of proving ability to perform the essential functions of a job with

12  accommodation should be placed on the plaintiff under this statute as well."  (Nadaf-Rahrov v. The

13  Neiman Marcus Group, Inc. (2008) 166 Cal.App.4th 952, 977-978 [83 Cal.Rptr.3d 190], internal

14  citations omitted.)

15

16       "Under the FEHA . . . an employer is relieved of the duty to reassign a disabled employee whose

17  limitations cannot be reasonably accommodated in his or her current job only if reassignment would

18  impose an 'undue hardship' on its operations or if there is no vacant position for which the employee is

19  qualified."  (Spitzer v. Good Guys, Inc. (2000) 80 Cal.App.4th 1376, 1389 [96 Cal.Rptr.2d 236].)

20

21                                      Secondary Sources

22

23       Chin et al., California Practice Guide: Employment Litigation, Ch. 7-A, Title VII And The

24  California Fair Employment And Housing Act, ¶ 7:213 (The Rutter Group)

25       Chin et al., California Practice Guide: Employment Litigation, Ch. 9-C, California Fair

26  Employment And Housing Act (FEHA), ¶¶ 9:2091, 9:2093-9:2095, 9:2197, 9:2252, 9:2265, 9:2366

27  (The Rutter Group)

28       1 Wrongful Employment Termination Practice (Cont.Ed.Bar 2d ed.) Discrimination Claims, §

2.79

2 Wilcox, California Employment Law, Ch. 41, Substantive Requirements Under Equal Employment Opportunity Laws, § 41.51[3][a], [b] (Matthew Bender)

11 California Forms of Pleading and Practice, Ch. 115, Civil Rights: Employment Discrimination, § 115.35 (Matthew Bender)

California Civil Practice: Employment Litigation § 2:50 (Thomson Reuters West)

**PLAINTIFF'S MEMORANDUM OF LAW ISO OF**

**DISPUTED INSTRUCTION NO. 5 RE DISABILITY DISCRIMINATION - REASONABLE ACCOMMODATION - FAILURE TO ENGAGE IN INTERACTIVE PROCESS OFFERED BY PLAINTIFF**

**(CACI 2546; (GOV. CODE, § 12940(N))**

Good-Faith Interactive Process. Government Code section 12940(n).

Federal Interpretive Guidance Incorporated. Government Code section 12926.1(e).

Interactive Process. The Interpretive Guidance on title I of the Americans With Disabilities Act, title 29 Code of Federal Regulations Part 1630 Appendix.

An employee may file a civil action based on the employer's failure to engage in the interactive process. (Claudio, supra, 134 Cal.App.4th at p. 243.)

"Two principles underlie a cause of action for failure to provide a reasonable accommodation. First, the employee must request an accommodation. Second, the parties must engage in an interactive process regarding the requested accommodation and, if the process fails, responsibility for the failure rests with the party who failed to participate in good faith. While a claim of failure to accommodate is independent of a cause of action for failure to engage in an interactive dialogue, each necessarily implicates the other." (Gelfo, supra, 140 Cal.App.4th at p. 54, internal citations omitted.)

1

2    "FEHA requires an informal process with the employee to attempt to identify reasonable

3  accommodations, not necessarily ritualized discussions."  (Nealy v. City of Santa Monica (2015) 234

4  Cal.App.4th 359, 379 [184 Cal.Rptr.3d 9].)

5

6    "FEHA's reference to a 'known' disability is read to mean a disability of which the employer has

7  become aware, whether because it is obvious, the employee has brought it to the employer's attention, it

8  is based on the employer's own perception - mistaken or not - of the existence of a disabling condition

9  or, perhaps as here, the employer has come upon information indicating the presence of a disability."

10  (Gelfo, supra, 140 Cal.App.4th at p. 61, fn. 21.)

11

12    "Once initiated, the employer has a continuous obligation to engage in the interactive process in

13  good faith. 'Both employer and employee have the obligation "to keep communications open" and

14  neither has "a right to obstruct the process." [Citation.] "Each party must participate in good faith,

15  undertake reasonable efforts to communicate its concerns, and make available to the other information

16  which is available, or more accessible, to one party. Liability hinges on the objective circumstances

17  surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the

18  party who fails to participate in good faith." [Citation.]' " (Swanson v. Morongo Unified School Dist.

19  (2014) 232 Cal.App.4th 954, 971−972 [181 Cal.Rptr.3d 553].)

20

21    "[Employer] asserts that, if it had a duty to engage in the interactive process, the duty was

22  discharged. 'If anything,' it argues, 'it was [employee] who failed to engage in a good faith interactive

23  process.'  [Employee] counters [employer] made up its mind before July 2002 that it would not

24  accommodate [employee]'s limitations, and nothing could cause it reconsider that decision.  Because the

25  evidence is conflicting and the issue of the parties' efforts and good faith is factual, the claim is properly

26  left for the jury's consideration."  (Gelfo, supra, 140 Cal.App.4th at p. 62, fn. 23.)

27

28    "None of the legal authorities that [defendant] cites persuades us that the Legislature intended

---

PLAINTIFF'S MEMORANDUMS OF LAW ISO OF DISPUTED JURY INSTRUCTIONS

1    that after a reasonable accommodation is granted, the interactive process continues to apply in a failure

2    to accommodate context . . . To graft an interactive process intended to apply to the determination of a

3    reasonable accommodation onto a situation in which an employer failed to provide a reasonable, agreed-

4    upon accommodation is contrary to the apparent intent of the FEHA and would not support the public

5    policies behind that provision."  (A.M. v. Albertsons, LLC (2009) 178 Cal.App.4th 455, 464 [100

6    Cal.Rptr.3d 449].)

7

8          "[T]he verdicts on the reasonable accommodations issue and the interactive process claim are not

9    inconsistent.  They involve separate causes of action and proof of different facts.  Under FEHA, an

10   employer must engage in a good faith interactive process with the disabled employee to explore the

11   alternatives to accommodate the disability.  'An employee may file a civil action based on the employer's

12   failure to engage in the interactive process.'  Failure to engage in this process is a separate FEHA

13   violation independent from an employer's failure to provide a reasonable disability accommodation,

14   which is also a FEHA violation.  An employer may claim there were no available reasonable

15   accommodations.  But if it did not engage in a good faith interactive process, 'it cannot be known

16   whether an alternative job would have been found.'  The interactive process determines which

17   accommodations are required.  Indeed, the interactive process could reveal solutions that neither party

18   envisioned." (Wysinger, supra, 157 Cal.App.4th at pp. 424-425, internal citations omitted.)

19

20         "We disagree . . . with Wysinger's construction of section 12940(n).  We conclude that the

21   availability of a reasonable accommodation (i.e., a modification or adjustment to the workplace that

22   enables an employee to perform the essential functions of the position held or desired) is necessary to a

23   section 12940(n) claim. [¶] Applying the burden of proof analysis in Green, supra, 42 Cal.4th 254, we

24   conclude the burden of proving the availability of a reasonable accommodation rests on the employee."

25   (Nadaf-Rahrov, supra, 166 Cal.App.4th at pp. 984-985.)

26

27         "We synthesize Wysinger, Nadaf-Rahrov, and Claudio with our analysis of the law as follows:

28   To prevail on a claim under section 12940, subdivision (n) for failure to engage in the interactive

process, an employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred.  An employee cannot necessarily be expected to identify and request all possible accommodations during the interactive process itself because ' " '[e]mployees do not have at their disposal the extensive information concerning possible alternative positions or possible accommodations which employers have . . . ' " ' However, as the Nadaf-Rahrov court explained, once the parties have engaged in the litigation process, to prevail, the employee must be able to identify an available accommodation the interactive process should have produced: 'Section 12940[, subdivision](n), which requires proof of failure to engage in the interactive process, is the appropriate cause of action where the employee is unable to identify a specific, available reasonable accommodation while in the workplace and the employer fails to engage in a good faith interactive process to help identify one, but the employee is able to identify a specific, available reasonable accommodation through the litigation process.' "  (Scotch, supra, 173 Cal.App.4th at pp. 1018-1019.)

Secondary Sources

8 Witkin, Summary of California Law (10th ed. 2005) Constitutional Law, § 936(2)

Chin, et al., California Practice Guide: Employment Litigation, Ch. 9-C, Disability Discrimination—California Fair Employment and Housing Act (FEHA), ¶¶ 9:2280–9:2285, 9:2345–9:2347 (The Rutter Group)

1 Wrongful Employment Termination Practice (Cont.Ed.Bar 2d ed.) Discrimination Claims, § 2.79

2 Wilcox, California Employment Law, Ch. 41, Substantive Requirements Under Equal Employment Opportunity Laws, § 41.51[3][b] (Matthew Bender)

11 California Forms of Pleading and Practice, Ch. 115, Civil Rights: Employment Discrimination, § 115.35[1][a] (Matthew Bender)

1 California Civil Practice: Employment Litigation, § 2:50 (Thomson Reuters)

///

///

**PLAINTIFF'S MEMORANDUM OF LAW ISO OF**

**DISPUTED INSTRUCTION NO. 6 RE INTRODUCTION TO TORT DAMAGES - LIABILITY**

**CONTESTED**

**OFFERED BY PLAINTIFF**

**(CACI 3900)**

Measure of Tort Damages. Civil Code section 3333.

Recovery of Damages Generally. Civil Code section 3281.

Recovery of Future Damages. Civil Code section 3283.

Damages Must Be Reasonable. Civil Code section 3359.

" 'Damages' are monetary compensation awarded to parties who suffer detriment for the unlawful act or omission of another; they are assessed by a court against wrongdoers for the commission of a legal wrong of a private nature." (Meister v. Mensinger (2014) 230 Cal.App.4th 381, 396 [178 Cal.Rptr.3d 604].)

Under Civil Code section 3333  "[t]ort damages are awarded to compensate a plaintiff for all of the damages suffered as a legal result of the defendant's wrongful conduct."  (North American Chemical Co. v. Superior Court (1997) 59 Cal.App.4th 764, 786 [69 Cal.Rptr.2d 466], italics omitted.)

"Whatever its measure in a given case, it is fundamental that 'damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery.'  However, recovery is allowed if claimed benefits are reasonably certain to have been realized but for the wrongful act of the opposing party."  (Piscitelli v. Friedenberg (2001) 87 Cal.App.4th 953, 989 [105 Cal.Rptr.2d 88], internal citations omitted.)

1

2      "In general, one who has been tortiously injured is entitled to be compensated for the harm and

3   the injured party must establish 'by proof the extent of the harm and the amount of money representing

4   adequate compensation with as much certainty as the nature of the tort and the circumstances permit.'

5   However, '[t]here is no general requirement that the injured person should prove with like definiteness

6   the extent of the harm that he has suffered as a result of the tortfeasor's conduct.  It is desirable that

7   responsibility for harm should not be imposed until it has been proved with reasonable certainty that the

8   harm resulted from the wrongful conduct of the person charged.  It is desirable, also, that there be

9   definiteness of proof of the amount of damage as far as is reasonably possible.  It is even more desirable,

10  however, that an injured person not be deprived of substantial compensation merely because he cannot

11  prove with complete certainty the extent of harm he has suffered.'  "(Clemente v. State of California

12  (1985) 40 Cal.3d 202, 219 [219 Cal.Rptr. 445, 707 P.2d 818], internal citations omitted.)

13

14      " 'Where the fact of damages is certain, the amount of damages need not be calculated with

15  absolute certainty.' 'The law requires only that some reasonable basis of computation of damages be

16  used, and the damages may be computed even if the result reached is an approximation…. .' " (Meister,

17  supra, 230 Cal.App.4th at pp. 396−397, original italics, internal citation omitted.)

18

19      "If plaintiff's inability to prove his damages with certainty is due to defendant's actions, the law

20  does not generally require such proof."   (Clemente, supra, 40 Cal.3d at p. 219, internal citations

21  omitted.)

22

23      "While a defendant is liable for all the damage that his tortuous act proximately causes to the

24  plaintiff, regardless of whether or not it could have been anticipated, nevertheless a proximate causal

25  connection must still exist between the damage sustained by the plaintiff and the defendant's wrongful

26  act or omission, and the detriment inflicted on the plaintiff must still be the natural and probable result

27  of the defendant's conduct."  (Chaparkas v. Webb (1960) 178 Cal.App.2d 257, 260 [2 Cal.Rptr. 879],

28  internal citations omitted.).

Secondary Sources

6 Witkin, Summary of California Law (10th ed. 2005) Torts, §§ 1548-1552, 1555-1558

California Tort Damages (Cont.Ed.Bar) Bodily Injury, §§ 1.2-1.6

4 Levy et al., California Torts, Ch. 50, Damages, § 50.02 (Matthew Bender)

15 California Forms of Pleading and Practice, Ch. 177, Damages, § 177.41 (Matthew Bender)

1 California Civil Practice:  Torts § 5:1 (Thomson Reuters)

**PLAINTIFF'S MEMORANDUM OF LAW ISO OF**

**DISPUTED INSTRUCTION NO. 7 DAMAGES ON MULTIPLE LEGAL THEORIES**

**OFFERED BY PLAINTIFF**

**(CACI 3934)**

"Regardless of the nature or number of legal theories advanced by the plaintiff, he is not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence. Double or duplicative recovery for the same items of damage amounts to overcompensation and is therefore prohibited.  In contrast, where separate items of compensable damage are shown by distinct and independent evidence, the plaintiff is entitled to recover the entire amount of his damages, whether that amount is expressed by the jury in a single verdict or multiple verdicts referring to different claims or legal theories."  (Roby v. McKesson Corp., 47 Cal.4th 686, 702 [101 Cal.Rptr.3d 773] (2009))

"As for the Court of Appeal's statement that under the instructions plaintiff was entitled to recover the same amount of damages under any of plaintiff's various theories, we have reviewed the instructions and none of them would preclude a finding of differing amounts of damage for each theory of recovery.  Indeed, as a matter of logic, it would seem unlikely that plaintiff's damages from being defamed by defendants would be identical to the damages he incurred from being ousted from [the] board of directors.  These theories of recovery seem based on different 'primary' rights and duties of the parties."  (Tavaglione v. Billings (1993) 4 Cal.4th 1150, 1158 [17 Cal.Rptr.2d 608, 847 P.2d 574.)

1

2      "The trial court instructed the jury that [plaintiff] could not be awarded duplicative damages on

3   different counts, thus suggesting that it was the jury's responsibility to avoid awarding duplicative

4   damages.  But neither the instructions nor the special verdict form told the jury how to avoid awarding

5   duplicative damages.  With a single general verdict or a general verdict with special findings, where the

6   verdict includes a total damages award, the jury presumably will follow the instruction (such as the one

7   given here) and ensure that the total damages award includes no duplicative amounts.  A special verdict

8   on multiple counts, however, is different.  If the jury finds the amount of damages separately for each

9   count and does not calculate the total damages award, as here, the jury has no opportunity to eliminate

10  any duplicative amounts in calculating the total award.  Absent any instruction specifically informing

11  the jury how to properly avoid awarding duplicative damages, it might have attempted to do so by

12  finding no liability or no damages on certain counts, resulting in an inconsistent verdict."  (Singh v.

13  Southland Stone, U.S.A., Inc. (2010) 186 Cal.App.4th 338, 360 [112 Cal.Rptr.3d 455].)

14

15      "A special verdict must present the jury's conclusions of facts, 'and those conclusions of fact

16  must be so presented as that nothing shall remain to the Court but to draw from them conclusions of

17  law.'  In our view, a special verdict on multiple counts should include factual findings identifying any

18  duplicative amounts, or a finding as to the total amount of damages eliminating any duplicative

19  amounts, so as to allow the trial court to avoid awarding duplicative damages in the judgment."  (Singh,

20  supra, 186 Cal.App.4th at p. 360, internal citation omitted.)

21

22      "'In California the phrase "cause of action" is often used indiscriminately to mean counts which

23  state [according to different legal theories] the same cause of action.'  But for purposes of applying the

24  doctrine of res judicata, the phrase 'cause of action' has a more precise meaning:  The cause of action is

25  the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal

26  theory (common law or statutory) advanced.  'The"cause of action" is based upon the harm suffered, as

27  opposed to the particular theory asserted by the litigant.  Citation.  Even where there are multiple legal

28  theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.

---

'Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different legal ground for relief." Citations.' Thus, under the primary rights theory, the determinative factor is the harm suffered.  When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right."

"Here the jury was properly instructed that it could not award damages under both contract and tort theories, but must select which theory, if either, was substantiated by the evidence, and that punitive damages could be assessed if defendant committed a tort with malice or intent to oppress plaintiffs, but that such damages could not be allowed in an action based on breach of contract, even though the breach was wilful." (Acadia, California, Ltd. v. Herbert (1960) 54 Cal.2d 328, 336–337 [5 Cal.Rptr. 686, 353 P.2d 294].)

"Ordinarily, a plaintiff asserting both a contract and tort theory arising from the same factual setting cannot recover damages under both theories, and the jury should be so instructed. Here, the court did not specifically instruct that damages could be awarded on only one theory, but did direct that punitive damages could be awarded only if the jury first determined that appellant had proved his tort action." (Pugh v. See's Candies, Inc. (1988) 203 Cal.App.3d 743,760, fn. 13 [250 Cal.Rptr. 195], internal citation omitted.)

"The trial court would have been better advised to make an explicit instruction that duplicate damages could not be awarded. Indeed, it had a duty to do so."  (Dubarry International, Inc. v. Southwest Forest Industries, Inc. (1991) 231 Cal.App.3d 552, 565, fn. 16 [282 Cal.Rptr. 181], internal citation omitted.)

Secondary Sources

6 Witkin, Summary of California Law (10th ed. 2005) Torts, § 1550

1    2 Levy et al., California Torts, Ch. 17, Nuisance and Trespass, § 17.23

2   (Matthew Bender)

3        15 California Forms of Pleading and Practice, Ch. 177, Damages, § 177.50

4   (Matthew Bender)

5        6 California Points and Authorities, Ch. 64, Damages:  Tort, § 64.150

6   (Matthew Bender)

7

8                    **PLAINTIFF'S MEMORANDUM OF LAW ISO OF**

9    **DISPUTED INSTRUCTION NO. 8 RE LEAVE OF ABSENCE AS A REASONABLE**

10                              **ACCOMMODATION**

11                          **OFFERED BY PLAINTIFF**

12                       **(2 Cal. Code Regs. §11068(c))**

13       2 Cal. Code Regs. §11068(c) ("Paid or unpaid leaves of absence. When the employee cannot

14   presently perform the essential functions of the job, or otherwise needs time away from the job for

15   treatment and recovery, holding a job open for an employee on a leave of absence or extending a leave

16   provided by the CFRA, the FMLA, other leave laws, or an employer's leave plan may be a reasonable

17   accommodation provided that the leave is likely to be effective in allowing the employee to return to

18   work at the end of the leave, with or without further reasonable accommodation, and does not create an

19   undue hardship for the employer. When an employee can work with a reasonable accommodation other

20   than a leave of absence, an employer may not require that the employee take a leave of absence.  An

21   employer, however, is not required to provide an indefinite leave of absence as a reasonable

22   accommodation.").

23

24       *Sanchez v. Swissport, Inc.*, 213 Cal.App.4th 1331, 1338 & 1339 (2013) ("Under the FEHA, a

25   disabled employee is entitled to a reasonable accommodation – which may include leave of no

26   statutorily fixed duration – provide that such accommodation does not impose an undue hardship on the

27   employer.").

28

1   *Jensen v. Wells Fargo Bank*, 85 Cal.App.4th 245, 263 (2000) ("Holding a job open for a disabled

2   employee who needs time to recuperate or heal is in itself a form of reasonable accommodation....").

3

4   *Hanson v. Lucky Stores, Inc.*, 74 Cal.App.4th 215, 226 (1999) ("We hold that a finite leave can

5   be a reasonable accommodation under FEHA, provided it is likely that at the end of the leave, the

6   employee would be able to perform his or her duties.") (italics added).

7

8   *Humphrey v. Memorial Hosps. Assn.*, 239 F.3d 1128, 1135-1136 (9th Cir. 2001) ("A leave of

9   absence for medical treatment may be a reasonable accommodation.... Where a leave of absence would

10   reasonably accommodate an employee's disability and permit him, upon his return, to perform the

11   essential functions of the job, that employee is otherwise qualified under the ADA.").

12

13   *Kimbro v. Atlantic Richfield Co.,* 889 F.2d 869, 878-879 (9th Cir. 1989) (employer could be

14   liable for failing to grant job protected leave because "it was clearly plausible that a leave of absence in

15   1981 would have provided Kimbro with an opportunity to endure the 1981 acute episode and then return

16   to work unimpaired for the foreseeable future").

17

18   *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999) (recognizing leave of

19   absence as reasonable accommodation)

20

21   **PLAINTIFF'S MEMORANDUM OF LAW ISO OF**

22   **DISPUTED INSTRUCTION NO. 9 RE ABILITY TO PERFORM WHEN ACCOMMODATION**

23   **SOUGHT IS RECUPERATIVE LEAVE OF ABSENCE**

24   **OFFERED BY PLAINTIFF**

25   *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999) ("By focusing on Nunes's

26   disability during the period of her medical leave, however, the district court misapplied the ADA's

27   'qualified individual' requirement. The ADA requires that Nunes be able to perform the essential

28   functions of her job 'with or without reasonable accommodation.' 42 U.S.C. § 12111(8). Unpaid

medical leave may be a reasonable accommodation under the ADA. See 29 C.F.R. Part 1630, Appendix (discussing § 1630.2(o)). Even an extended medical leave, or an extension of an existing leave period, may be a reasonable accommodation if it does not impose an undue hardship on the employer. See 42 U.S.C. § 12111(9), (10); *Norris v. Allied-Sysco Food Servs., Inc.*, 948 F.Supp. 1418, 1438 (N.D. Cal. 1996). If Nunes's medical leave was a reasonable accommodation, then her inability to work during the leave period would not automatically render her unqualified.").

*Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 646-647 (1st Cir. 2000) (in leave of absence as reasonable accommodation case, trial "court correctly stated that 'it is [the] plaintiff's burden to prove that, at the time she sought to resume her job, she had the ability to perform the essential functions of secretary to the Validation Department.").

*Hodge v. Henry County Medical Center*, 341 F.Supp.2d 968, 975-978 (W.D. Tenn. 2003) (employer argued employee was not a "qualified individual" because of excessive absenteeism: "The Court finds that Plaintiff has created a genuine issue of material fact as to whether he is an otherwise qualified individual who could perform the functions of the communication technician position with the use of a reasonable accommodation in the form of an extended leave of absence.").

*Humphrey v. Memorial Hosps. Assn.*, 239 F.3d 1128, 1135-1136 (9th Cir. 2001) ("A leave of absence for medical treatment may be a reasonable accommodation.... [W]here a leave of absence would reasonably accommodate an employee's disability and permit him, upon his return, to perform the essential functions of the job, that employee is otherwise qualified under the ADA."); see also *Kimbro v Atlantic Richfield Co.*, 889 F.2d 869, 878-879 (9th Cir. 1989).

///

///

///

///

///

**PLAINTIFF'S MEMORANDUM OF LAW ISO OF**

**DISPUTED INSTRUCTION NO. 10 RE DUTY TO ACCOMMODATE IS ONGOING**

**OBLIGATION**

**OFFERED BY PLAINTIFF**

*McAlindin. v. County of San Diego*, 192 F.3d 1226, 1237 (9th Cir. 2000) ("The ADA places a "duty to accommodate" on employers in order to remove barriers that could impede the ability of qualified individuals with disabilities to perform their jobs. *Criado v. IBM Corp.,* 145 F.3d 437,  445 (1998). Moreover, this is a " 'continuing' " duty that is " 'not exhausted by one effort'." *Id.* (quoting *Ralph v. Lucent Techs., Inc.,* 135 F.3d 166, 172 (1st Cir.1998))."), *opinion amended on denial of reh'g*, 201 F.3d 1211 (9th Cir. 2000)).

**PLAINTIFF'S MEMORANDUM OF LAW ISO OF**

**DISPUTED INSTRUCTION NO. 11 RE INTERACTIVE PROCESS – OBLIGATIONS OF**

**EMPLOYER**

**OFFERED BY PLAINTIFF**

2 Cal. Code Regs. §11069(c) ("Obligations of the Employer or Other Covered Entity. An employer or other covered entity shall engage in a timely, good faith interactive process as follows: (1) The employer or other covered entity shall either grant the applicant's or employee's requested accommodation, or reject after due consideration and initiate discussion with the applicant or employee regarding alternative accommodations.")

*Barnett v. US Air, Inc.*, 228 F.3d 1105, 1114-17 (9th Cir. 2000) (en banc)[1] ("The interactive process requires communication and good-faith exploration of possible accommodations between

---

[1] *Barnett* remains good law with regards to many issues, including engagement in the interactive process despite the U.S. Supreme Court vacating the opinion on grounds related to the issue of providing an accommodation that disrupts a well-established seniority system. *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).

employers and individual employees. The shared goal is to identify an accommodation that allows the employee to perform the job effectively. Both sides must communicate directly, exchange essential information and neither side can delay or obstruct the process." "Employers should 'meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered employee's request, and offer and discuss available alternatives when the request is too burdensome.'" "The interactive process is the key mechanism for facilitating the integration of disabled employees into the workplace. Employers who reject this core process must face liability when a reasonable accommodation would have been possible. Without the interactive process, many employees will be unable to identify effective reasonable accommodations. Without the possibility of liability for failure to engage in the interactive process, employers would have less incentive to engage in a cooperative dialogue and to explore fully the existence and feasibility of reasonable accommodations. The result would be less accommodation and more litigation, as lawsuits become the only alternative for disabled employees seeking accommodation. This is a long way from the framework of cooperative problem solving based on open and individualized exchange in the workplace that the ADA intended.")

**PLAINTIFF'S MEMORANDUM OF LAW ISO OF**

**DISPUTED INSTRUCTION NO. 12 RE REASSIGNMENT TO A VACANT POSITION**

**OFFERED BY PLAINTIFF**

2 Cal. Code Regs. §11068(d)(1)(B) ("Reassignment to a vacant position. (1) As a reasonable accommodation, an employer or other covered entity shall ascertain through the interactive process suitable alternate, vacant positions and offer an employee such positions, for which the employee is qualified, under the following circumstances: … (B) if accommodation of the essential functions of an employee's own position creates an undue hardship."

///

///

///

**PLAINTIFF'S MEMORANDUM OF LAW ISO OF**

**DISPUTED INSTRUCTION NO. 13 RE ACTION BASED ON NEED FOR**

**ACCOMMODATION IS DIRECT EVIDENCE OF SUBSTANTIAL MOTIVATING REASON**

**FOR THE ACTION TAKEN**

**OFFERED BY PLAINTIFF**

*Wallace v. Cty. of Stanislaus*, 245 Cal.App.4th 109, 126, 133-134 (2016) *reh'g denied* (Mar. 24, 2016), *review denied* (May 11, 2016) (evidence that employer fired employee due to requested accommodation is direct evidence that the substantial motivating reason for termination was due to the plaintiff's disability); *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139-40 (9th Cir. 2001) (conduct that is a result of the disability is part of the disability, not a separate basis for termination).

**PLAINTIFF'S MEMORANDUM OF LAW ISO OF**

**DISPUTED INSTRUCTION NO. 14 RE CANCER IS A PROTECTED MEDICAL CONDITION**

**OFFERED BY PLAINTIFF**

**(GOVERNMENT CODE SECTION 12926(I))**

Government Code Section 12940(a) ("It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: (a) For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, or sexual orientation of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."); Government Code Section 12926(i) (" ' Medical condition' means either of the following: (1) Any health impairment related to or associated with a diagnosis of cancer or a record or history of cancer."); Swanson v. Morongo Unified Sch. Dist., 232 Cal. App. 4th 954, 964, 181 Cal. Rptr. 3d 553, 561 (2014), as modified on denial of reh'g (Dec. 23, 2014) ("Under the FEHA, the term '[m]edical condition" includes "[a]ny health impairment related to or

associated with a diagnosis of cancer or a record or history of cancer.' (§ 12926, subd. (i).)")

### PLAINTIFF'S MEMORANDUM OF LAW ISO OF
### DISPUTED INSTRUCTION NO. 15 RE DISABILITY DISCRIMINATION – AFFIRMATIVE
### DEFENSE – UNDUE HARDSHIP
### OFFERED BY PLAINTIFF
### (CACI 2545)

Government Code section 12940(m) provides that it is an unlawful employment practice "[f] For an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee. Nothing in this subdivision or in paragraph (1) or (2) of subdivision (a) shall be construed to require an accommodation that is demonstrated by the employer or other covered entity to produce undue hardship, as defined in subdivision (u) of Section 12926, to its operation."

Government Code section 12926(u) provides:

"Undue hardship" means an action requiring significant difficulty or expense, when considered in light of the following factors:

(1) the nature and cost of the accommodation needed,

(2) the overall financial resources of the facilities involved in the provision of the reasonable accommodations, the number of persons employed at the facility, and the effect on expenses and resources or the impact otherwise of these accommodations upon the operation of the facility,

(3) the overall financial resources of the covered entity, the overall size of the business of a covered entity with respect to the number of employees, and the number, type, and location of its facilities,

(4) the type of operations, including the composition, structure, and functions of the workforce of the entity, and

(5 )the geographic separateness, administrative, or fiscal relationship of the facility or facilities.

Secondary Sources

Chin et al., California Practice Guide: Employment Litigation, Ch. 9-C, California Fair Employment And Housing Act (FEHA), ¶¶ 9:2250, 9:2345, 9:2366, 9:2367 (The Rutter Group)

1 Wrongful Employment Termination Practice (Cont.Ed.Bar 2d ed.) Discrimination Claims, § 2.80

2 Wilcox, California Employment Law, Ch. 41, Substantive Requirements Under Equal Employment Opportunity Laws, § 41.51[4][b] (Matthew Bender)

11 California Forms of Pleading and Practice, Ch. 115, Civil Rights: Employment Discrimination, §§ 115.35, 115.54, 115.100 (Matthew Bender)

**DATED:** July 6, 2016                      **Genie Harrison Law Firm**

                                             **By:**  */s/ Genie Harrison* _____
                                                  **Genie Harrison, Esq.**
                                                  **Amber Phillips, Esq.**
                                                  **Attorneys for Plaintiff Cynthia Gutierrez**